IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREGORY LEE
           PLAINTIFF

     V

LAUREL HARRY, in her individual and
offical capacity as secretary of Pennsylvania
Department of corrections

George Little, in his individual and offical
Capacity as former secretary of Pennsylvania
Department of corrections

Todd Bickle, in his individual and offical capacity
as Deputy secretary of Pennsylvania Department
of corrections

Tammy FERGURSON, in her individual and offical
capacity as Deputy Secretary of Pennsylvania
Department of Corrections.

MICHAEL ZAKEN, in his individual and offical
capacity as superintendent of state correctional
Institution at Greene

STEPHEN BUZAS, in his individual and offical capacity
as Deputy Superintendent of state correctional
Institution at Greene

DANIEL COULEHAN, in his individual and offical
capacity as unit manager of Intensive managment
unit (IMU) of State Correction Institution at Greene
           DEFENDANTS

CIVIL NO:
2:24-CV-126

RECEIVED

JAN 3 0 2024

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

## COMPLAINT
### Introduction

1. The Plaintiff Gregory Lee is 43 year old prisoner who has been held in solitary confinement for more than 6 consecutive years without rational justification and without being afforded any meaningful process to redress his indefinite solitary confinement or to rectify the Physical and Psychological harm it has inflicted on him.

His confinement to a solitary confinement cell for 23 hours a day under deplorable conditions has harmed his mental and physical health, resulting in permanent damage.

2. The extreme, cruel and unusual conditions of Plantiff Lee confinement coupled with being subjected to sadistic "psychological mind-games" without any meaningful review process to redress his indefinite confinement in solitary confinement violate 42 U.S.C. §1983 as well as the Eighth and Fourteenth Amendments to the United States Constitution.

3. Plaintiff Lee is seeking injunctive, declaratory, and monetary relief to redress these violations of his constitutional rights.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1243 (a)(3).

5. This Court is the appropriate venue pursuant to 28 U.S.C. § 1391 (b)(2), because the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

### PARTIES

6. Plaintiff Gregory Lee (hereinafter "Lee"), is and was at all times relevant to this action a prisoner in the custody of the Pennsylvania Department of corrections (DOC). Plaintiff is currently incarcerated in solitary confinement at the State Correctional Institution (SCI) Greene.

7. Defendant Laurel Harry is the Secretary of the DoC, her employment and mailing address is 1920 Technology Parkway, Mechanicsburg PA 17050-8507. Defendant Harry is sued in her individual and offical capacity.

2 of 19

8. Defendant George Little was former Secretary of the Doc. His mailing address is unkown at this time he is being sued in his individual and offical capacity.

9. Defendant Todd Bickle is Deputy secretary of the Doc. His employment and mailing address is 1920 Technology Parkway, Mechanicsburg PA 17050-8507. Defendant Bickle is being sued in his individual and offical capacity.

10. Defendant Tammy Fergurson is Deputy secretary of the Doc. Her employment and mailing address is 1920 Technology Parkway, Mechanicsburg PA 17050 - 8507. Defendant Fergurson is being sued in his individual and offical capacity.

11. Defendant Michael Zaken is superintendent of SCI GREENE. His Employment and mailing address is SCI Greene 169 Progress Drive, Waynesburg Pa 15370, Defendant Zaken is being sued in his individual and offical capacity.

12. Defendant Stephen Buzas is Deputy superintendent of SCI GREENE. His Employment and mailing address is SCI Greene 169 Progress drive, Waynesburg PA 15370, Defendant Zaken is being sued in his individual and offical capacity.

13. Defendant Daniel Coulehan is Unit manager of the IMUIRRL Program at SCI Green. His employment and mailing address is SCI Greene 169 Progress drive, Waynesburg PA 15370, Defendant Coulehan is being sued in his individual and offical capacity.

## STATEMENT OF FACTS

14. Plaintiff Lee was committed to the Doc in 2002 following his

conviction for homicide. He is serving a sentence of life imprisonment.

15. On November 24 2018 while confined at SCI Coaltownship lee was involed in a staff assualt. Since the incident he been held in solitary confinement on Level 5 housing units.

16. Plaintiff completed his DC sanction for the staff assualt at SCI Coal township and was then transfred to SCI Smithfield.

17. Plaintiff met with PRC staff at SCI Smithfield and they told him that they didnt feel safe letting him out in there Population.

18. Plaintiff was then transfred to SCI Forest August 28 2019 he met with PRC August 30 2019. PRC told him he would be lockdown an placed in the special managment unit (Smu).

19. The special managment unit (Smu) is a long term solitary confinement program. It consist of 5 phases that must be completed in order to make it to General Population. "Phase 5" is DC time plus 3 months, "Phase 4" is 3 month, "Phase 3" is 3 months "Phase 2" is 3 months, "Phase 1" is General Population 6 month on Probation while housed in GP.

20. Plaintiff participated in the Smu program expecting to make it back to general population.

21. Plaintiff was a phase 3 particieate in the Smu meaning he had less then 6 month to make it back to population around this time he was acuptutly transfred to SCI Greene.

22. Apon arrival at SCI Green Plaintiff met with PRC Buzas Coulahan and other staff members. They told Plaintiff that the SMU was Closed down.

23. Plaintiff told PRC that he was a Phase 3 smu Participate an was almost done the Program.

24. PRC explained to Plaintiff, that due to the SMU closing down he would have to be Placed in the Intensive Management Unit (IMU).

25. PLANTIFF was then Placed on RRL at SCI Green. PRC explained to Plaintiff that secretary Little signed off for him to be Placed on RRL.

26. Plantiff was illegally Placed in a Imu Program at the time the Program had no handbook, Policy or rules.

27. Imu Hand book was implemented into DOC Policy rules and regulations may 4 2022.

### PERPETUAL CONFINEMENT TO THE RESTRICTED RELEASE LIST

28. Plaintiff is currently housed under the PA Doc's most severe administrative and isolative "lockdown" status known as the Restricted realease list (RRL)

29. The RRL status is alleged to be for those inmates who Present a clear and Present threat to the orderly operations of a facility; which transfer to a different facility (within the department Jurisdiction) would not cure.

30. Plaintiff has been confined to the 'RRL' status for over 2 years now; which most of this time has been maintained without negative behavios.

31. For almost two decades the RRL has been the PA Doc's method for masking it's unconstitutional intent to misuse administrative

custody procedures, to indefinately confine particular inmates to harsh solitary conditions known to be detrimental to both mental and physical health over prolonged periods.

32. It is also important to mention that the RRL disproportionately affects African-American and Latino inmates; more than white or Caucasian inmates (who committed the same or similar policy/rule infractions).

33. There are roughly 26 facilities within the jurisdiction of the PA. Doc. which Plaintiff has only been to __6__ ; thus making it evident that he was not placed on RRL as a last resort; as is implied by policy DC-ADM 802.

34. The RRL is an indefinate designation to solitary conditions; which could only be imposed or lifted by the secretary of corrections originally; but now is determined by defendants Tabb Rickle and Tammy Ferguson.

35. Upon information or belief — the switch of who designates or lifts RRL status was for nefarious and covert reasons (relative to others asserting violations of their rights).

36. There is no definitive critera which needs to be met for either initiation or removal of RRL status.

37. Unlike most other "programs" or administrative custody status within the PA DOC. the "RRL" has no appeal process for either placement or continuence which both are final without the opportunity for rebuttal or to be meaningfully heard (in general).

38 Instead; inmates on "RRL" status are supposed to be reviewed annually; which is a circumventive process; usually resulting in unexplained and un warranted continuations of status for multiple years (perfunctor review).

39. The annual review process is essentially a sham by defendants: Harry, Little, Ferguson, Brickle, to make it appear that some (due) "process" is being affored; when in actuality — the intent behind placing some one on RRL status is to keep them confined to the "RHU" for several years before any (real) consideration for removal of status is given.

## CONDITIONS OF CONFINEMENT

40. For the last years since Nov 24 2018 through the Present date Plaintiff Lee has been subjected to the following depravations and inhumane treatments:

A. Was given only 10-15 minutes to eat his meals alone in his cell.

B. Was served lower-quality food than inmates in general prison population.

C. Was prohibited from participating in any of the educational programs which are available to prisoners in general populations.

D. Was prohibited from participating in any organized activities in the prison

E. Was prevented from having contact visitation with clergy and family members

F. Was prohibited bfrom having physical contact visitation with any visitor, as all physical contact is forbidden by PA DOC Policy.

G. Was subject to mandatory strip search and possibility of a body cavity search every time he leaves and enters cell.

H. Was placed in hand cuffs and shackles every time he left his cell, and remained hand cuffed and shackled until he was securely locked in another area, such as the exercise cage or shower area

I. Was subjected to extreme limits on the amount of personal property he has been permitted to keep in his cell, which are much more limiting than those imposed on persons in the general eopvlation

J. Was deprived of any meaningful interaction with any other prisoner, due to a strict "no talking" policy for prisoners in solitary confinement

K. Was deprived of any meaningful interaction with any prison official or staff member

L. Was deprived of the opportunity to participate in any form of communal religious worship or prayer

M. Was deprived the opportunity to participate in any vocational recreational or educational program in prison, forcing him to spend the vast majority of his time - idle in his cell, with no constructive or positive use of his time

N. Was kept in cells with doors which were sealed around their edges, to prevent any inmates from talking through doors.

42. Thus, for the past several years and counting plaintiff has been almost totally deprived of all meaningful human contact; physical activity, personal property, and mental stimulation.

43. Adding to the mental strain created by the already inhumane conditions of being in perpetual solitary confinement, with no hope of relief, the cell conditions which plaintiff has been subjected to are significantly more oppressive than those in the general population.

FOR EXAMPLE

a. is only permitted to shower three days per week on weekdays,

b. has been confined to cells illuminated by artificial lights, 24 hours per day. The lights are never turned off.

c. During the entire period of solitary confinement, plaintiff has endured the extreme noise which is a hallmark of restricted housing units.

d. Unlike in general population, the housing units on which Plaintiff was confined were subject to checks every 15 minutes during the day, and every 30 minutes during the night meaning correction officers would enter and exit from each tier, and use of bright flash lights during the checks, made sleep extremely difficult through the night.

e. Due to the 24 hour lighting and noise Plaintiff has endured extreme sleep disruption.

f. the small window in Plaintiff cell is shielded of, which both prevents the natural light from entering his cell, and does not allow him to see anything outside his window.

g. the perpetual lighting, coupled with the tinted nature of his cell window, has caused Plaintiff to experience the disorienting sensation that there was never a meaninful transition from day light to darkness for nearly several years.

h. during his entire period of solitary confinement, Plaintiff was confined to a cell containing a bed, steel toilet, steel sink, steel desk and stool, as such Plaintiff has very little remaining room to exercise or walk around

i. Plaintiff was restricted to going to "yard" in an exercise cage for one hour per week day, containing no weight or exercise equipment of any kind.

j. the enclosed cages are approximately seventy-five square feet, providing less space than the cell in which Plaintiff spent the remainder of his time.

k. On saturdays and sundays Plaintiff is held in his cell for twenty-four hours per day, without any opportunity to shower or go to the exercise cage in the yard

44. For several years Plaintiff has been almost totally deprived of all meaninful human contact, physical activity, personal property, and and mental stimulation.

9  OF 19

45. All of these conditions and restrictions were significantly harsher than those which were imposed upon prisoners in the general population of the Department of corrections facilities.

46. Yet, they were imposed on plaintiff purely for administrative reason rather than for any disciplinary purpose.

47. Plaintiff was never told what specific step he must take to be eligible for release from RRL status; to the contrary, he has been advised that he will remain on RRL status for the remainder of his incarceration which will not end intil death.

48. Plaintiff is in serious danger of experiencing debilitating psychological impairments for the rest of his life, and will suffer the worsening effects on his mental health as his solitary confinements continues.

49. The totality of the conditions as described above makes it clear that unnecessarily prolonged placement in RHU's is unduly and unjustifiably harsh; thus unconstitutional especially when the known condition is imposed indefinitely against inmates, designated to "RRL" status.

50. Defendants Harry, Ferguson, Bickle, little and John doe of the bureau of heathcare are well aware of the abundance of literature and psychiatric studies have found that prolongation in solitary confinement has the potential to cause severe psychological harm, which effect may be irrepairable, but in complete disregard of this knowledge, they still recklessly promote prolonged segregation, maliciously weaponizing this type of confinement against prisoners such as plaintiff, ignoring their obligation to "protect" in the interest of promoting health and safety.

60. In this way they have created a platform that equates to psychological torture in the PA.DOC, through its long term confinement units and status, which it is apparent that they have no interest

in adopting or utilizing safer alternative solutions.

61. At all time relevant to this lawsuit, former Secretary Wetzel, Little, Harry, Bickle, Ferguson knew the risk proposed by prolonged solitary confinement, and yet they failed to take reasonable measures to end the deprivation of Plaintiff Lee basic human needs

62. Wetzel has previously testified that he was aware of the body of literature describing the effects of long-term solitary confinement.

63. Dr. Stuart Grassion is a board certified Psychiatrist who was on the faculty of the harvard medical school for over twenty-five years. He is world renowned expert on the psychiatric effects of solitary confinement and has had extensive expereince in evaluating the Psychiatric effects of solitary confinements.

64. In the course of his Professional involvement, Dr. Grassian has opined as an expert regarding the psychiatric impact of federal and state segregation and disciplinary units.

65. Dr Grassian's body of work was recognized by supreme Court Justice Anthony Kennedy in his concurring opinion in Davis v. Ayala, 576 U.S. 257, 289 (2015) ("research still confirms what this Courts suggested overacentury ago". Years on end of of near of near-total isolation exact a terrible price ... Common side effects of solitary confinement include anxiety, Panic, withdrawal, hallucinations, self-mutilation, and sudidal thoughts and behavior")

66. Dr Grassian is the author of Psychiatric Effects of solitary confinement, 22 Wash. U.J.L. & Pol'y (2006) and several other scholarly works on the psychiatric effects of solitary confinement.

67. Defendants and DoC officals has previously admitted that an inmate's mental health should be considered when placing an inmate in long-term solitary confinement.

68. In recent years, the use of solitary confinement has been publicly condemned as unnecessary and inhumane, when he described the Davis Case cited above, JusticeKennedy told the House Appropriation Subcommittee on Financial Services and General Gouverment: "This idea of total incarceration just isn't working, and it's not humane ... Solitary Confinement literally drives men mad!"

69. In 2016, the Department of corrections publicly acknowledged "the need to reduce the use of administrative segregation (know as restrictive housing in Pennsylvania)" and vowed that it "is committed" to doing this.

70. Yet plaintiff has remained in solitary confinement on RRL status for nearly six years, with every indication that he will continue on RRL status as long as he remains in DOC Custody.

## INJURIES TO PLAINTIFF

71. As the duration of Plaintiff Lee solitary confinement grew longer without any realistic hope of it ending, he begin to experience increasing feelings of anxiety, fustration, sleep insomnia, concentration and memory loss, and depression coupled with suicidual thoughts.

72. The older Plaintiff Lee got while in solitary confinement the more the conditions he was experiencing worsened. His mental stability has become progressively worse each year and it is now challenging for him to perform the most basic tasks such as remembering his age an names of his closest family members, spelling the simplest

words; exercising; reading and writing; and simply getting out of bed to face another day of meaningless monotony of life in solitary confinement.

73. Plaintiff lee did not experience these psychological problems when he was first placed in solitary confinement 6 years ago.

74. Plaintiff developed a severe medical condition where he suffers from severe shakes in which it makes it hard for him to write, and perform basic tasks. These conditions got worser due to the lack of adequate medicare recived in the restricted housing unit. Plaintiff started developing these conditions due to him being force to sit on steel an sleep on steel for years on in and with no way to excersise or move around.

75. Plaintiff has increasing difficulty sleeping. He wakes up frequently throughout the night and has difficulty getting back to sleep.

76. Plaintiff no longer has the capacity to feel empathy for others that he once had, his emotional capacity has been diminished by the prolonged deprivation of human contuct and interaction.

77. Plaintiff has increased difficulty concentrating, he has difficulty sustaining thoughts or focusing on a subject for more than a few minutes. This problem has gotten worse each year his solitary confinement is continued.

78. Plaintiff has permanently suffered severe damage to his short-term memory capacity. He struggles to recall acts performed minutes or hours before.

79. Depression, anxiety, asocial feelings, cognitive impairment, memory loss, and concentration difficulties are well-established adverse reactions to prolonged solitary confinement. Neuroscience has also established that prolonged isolation damages brain function and physically diminishes parts of the brain.

80. Plaintiff suffers the loss of many relationships due to him being confined to the RHU for several years which severely hendered his ability to maintain meaningful communication.

81. Plaintiff RRL status has robbed him of many years of opportunity to utilize all available rehabilitive programs and vocational training the PA DOC has to offer.

82. Plaintiff may never recover the normal human capacity to have empathy and caring feelings for others, he feels distanced and disassociated ~~used~~ from life people and reality.

83. By continuing to hold Plaintiff in solitary confinement, Defendants are substantially increasing the actual harm to Plaintiff with each day longer hea unnecessarily spends in solitary confinement. The psychologically devastating conditions imposed on ~~Plaintiff~~ will continue to exacerbate the rapid deterioration of his mental health.

## CAUSES OF ACTION

### COUNT I
Eighth Amendment Violation- Deliberate indifference
Defendants Harry, Little, Bickle, Ferguson, Zaken, Bucas, Cowichan

84. Paragraphs 1 through 99 are incorporated herein by reference as though fully set forth.

85. Defendants Harry, Little, Brickler Ferguson, Zaken, Buzas, Coulehan all violated Plaintiff's right to be free from cruel and unusual punishment by their deliberate indifference to the potential for serious harm that prolonged solitary confinement causes while disregarding Plaintiffs health and safety as they collectively promote the oppressive and harmful use of long-term RHU based segregation units as well as indefinate status like RRL. The Justification for putting Plaintiff on RRL in 2018 was his assaultive behavior. Because he has not recived a misconduct in more than 2 years there's no penological Justification for keeping him in the equivalent of solitary confinement

## COUNT II
### Fourteenth Amendment violation - Due Process
### Defendants Harry, Little, Ferguson, Zaken, Buzas, Coulehan

86. Plaintiff Harry, Little, Ferguson, Zaken, Buzas, Coulehan, all violated Plaintiff's rights to due process by collectively initiating RRL status against him and then continuing said status for years without ever providing him the opportunity for meaningful reviews on appeals but rather knowingly condoning perfunctory reviews that serve no other purpose then to manipulatively circumvent due process.

87. These same defendants also violated plaintiff's rights to due process by making no policy provisions affording RRL inmates adequate access to rehabilitative programming; which allowed administrations to have RRL inmates idling under solitary conditions for years; to his detriment.

88. As a result of this constitutional violation; Plaintiff suffered injuries and damages as described above

## COUNT III

### Substantive Due Process Violation
### Defendants Harry, Little, Ferguson, Zaken, Buzas, Coulehan

89. Plaintiff re-alleges paragraphs 1 through 89 as if fully stated herein.

90. All defendants have violated plaintiffs rights to substantive due process under the Fourteenth Amendment to the United States Constitution by continuing to hold him in solitary confinement for more than 5 years without a valid penological or other justification. Defendants conduct shocks the conscience and does not have a rational basis.

## LEGAL STANDARD

91. The Supreme Court has interpreted the Eighth Amendment "to impose affirmative duties on prison officials to 'provide humane conditions of confinement." Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)

92. The Third Circuit has followed. See Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 1000 (3d Cir. 1983) (length of confinement a factor in analyzing conditions under the constitution); Peter Kin v. Jeffes, 855 F.2d 1021, 1025 (3d. Cir. 1988) (objective factors which a court must examine in prison conditions cases include basic humane needs such as food, shelter, and medical care as well as sanitation, safety, the physical plant, educational/rehabilitation program, the length of confinement, and out of cell time") Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) ("the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting,

bedding, ventilation, noise, education and rehabilitation Programs, opportunities for activities outside the cells, and the repair and functioning of basic Physical facilities such as plumbing ventilation and showers".)

93. In Sadin v. Conner, 515 U.S. 472 (1995), the Supreme Court Concluded that state-created liberty intrest arise when a Prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of Prison Life". Id at 484.

94. In Shoat v. Horn the Third Circut held "We have no difficulty concluding that eight Years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of Prison life, and that [Plaintiffs] several Years of confinement subjects him to conditions that differ significantly from 'routine' Prison conditions in Pennsylvania State institutions" thereby posing a significant hardship on Plaintiff 213 F.3d 140,144 (3rd Cir 2000).

## RELIEF SOUGHT

WHEREFORE, PLAINTIFF request this court Grant the following relief:

A. Award compensatory damages in the amount of $25,000 against each defendant.

B. Award Punitive damges in the amount of $50,000 against each defendant:

C. Declare Defendants conduct unlawful:

D. Enjoin and restrain Defendants from incarcerating Lee in Solitary Confinement or other similar condition and order Lee's placement in the General population.

E. Grant attorneys' fees and costs;

F. Trial by Jury; and

G. Such other relief as the court deems Just and Proper.

## EXHAUSTION OF REMEDIES

Plaintiff has exhausted all available administrative remedies as required under the PLRA. Prior to filing this Prison conditions Lawsuite.

## VERIFICATION STATEMENT

I, Gregory Lee, hereby verify that the contents of this 1983 complaint are correct and true to my knowledge, except those statements made upon information and belief, which are also believed to be correct and true. Any false statements are subject to the Penalties of unsworn falsification to authorities pursuant to 28 U.S.C § 1746.

Gregory Lee
SIGN

Gregory Lee

SCI GREEN
169 Progress Drive
Waynesburg, PA 15370

DATE 1-23-2024

18 OF 19

PROOF OF SERVICE

I , Gregory Lee , here by attest that a correct and true copy of the attached civil compliant is being served upon the following via First-Class mail

office of the clerk
United stat District court
700 Grant street , Room 3110
Pittsburg , PA 15219

_Gregory Lee_
SIGN
_Gregory Lee_   # FG4638
SCI Green
169 Progress Drive
Waynesburg , PA 15370

DATE _1-23-2024_

19 OF 19